## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GRAYTZ MORRISON,** | : | |
| **Plaintiff** | : | **No. 1:20-cv-01571** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **UNITED STATES OF AMERICA, <u>et al.</u>,** | : | |
| **Defendants** | : | |

### <u>MEMORANDUM</u>

Presently before the Court is the motion to dismiss (Doc. No. 24) filed by Defendants

Officer K. Anderson ("Anderson"), Public Health Service Provider Creveling ("Creveling"),

Special Investigative Agent J. Lyons ("Lyons"), Counselor Christopher Snyder ("Snyder"),

Officer J. Miller ("Miller"), and Warden D.K. White ("White").  Defendant Larren Hofford

("Hofford") has been granted permission to join in the motion to dismiss.  (Doc. Nos. 28, 33.)

<u>Pro se</u> Plaintiff Graytz Morrison ("Plaintiff") has filed neither a response nor a motion seeking

an extension of time to do so.  Accordingly, because the time for responding has expired, the

motion to dismiss is ripe for disposition.

### I.  BACKGROUND

Plaintiff, who was formerly incarcerated at the Federal Correctional Institution

Allenwood ("FCI Allenwood") in White Deer, Pennsylvania, initiated the above-captioned

action on September 1, 2020 by filing a complaint pursuant to the Federal Tort Claims Act

("FTCA") and <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S.

388 (1971), ), raising claims alleging that he received inadequate medical care while incarcerated

at FCI Allenwood.  (Doc. No. 1.)  Plaintiff brings suit against Moving Defendants as well as the

United States of America and Lieutenant Carillo ("Carillo").[1]  (Id.)  Plaintiff alleges that on July 27, 2019, around 7:30 p.m., he began "experiencing severe and persistent pains in his lower abdominal/stomach region."  (Id. at 10.)  Plaintiff told Defendant Anderson about his pain, who informed Plaintiff that "no medical specialists were available and that he needed to return to his cubicle for 12AM count."  (Id.)  Around the 2:00 a.m. count, Plaintiff went to the shower area "where he sat in a chair, doubled over in pain through the count [and] several of Defendant Anderson's unit rounds."  (Id.)

On July 28, 2019, Plaintiff "struggled to ambulate to Health Services" for the pill line, "where he collapsed in the lobby and once again in front of the Urgent Care station staffed by Defendant Hoffard."  (Id.)  Inmate Gutierrez helped Plaintiff to his feet.  (Id.)  Defendant Hofford "immediately began screaming at Plaintiff, demanding he get off of the floor."  (Id.)  She asked if Plaintiff's unit officer knew he was at Health Services, and Plaintiff responded that Defendant Anderson was aware.  (Id.)  Defendant Hofford called the unit officer, who "confirmed his knowledge of the situation, but stated he had not sent [Plaintiff] to Health Services."  (Id.)  Plaintiff alleges that Defendant Hofford "demanded [that he] return to his housing unit with no treatment, evaluation, or observation."  (Id.)  He was told to return on July 29, 2019, for the morning sick call.  (Id.)  Plaintiff returned to his housing unit and informed Defendant Miller of his condition and pain.  (Id.)  Defendant Miller called the Medical Department, but two (2) hours later, he notified Plaintiff that Defendant Hofford had again refused to treat him.  (Id.)  Plaintiff remained bed-ridden, "suffering excruciating pain and unable

---

[1] The United States has been granted an extension until July 19, 2021 to respond to Plaintiff's complaint.  (Doc. No. 31.)  Defendant Carillo has not yet been served with the complaint.  In an Order dated June 22, 2021, the Court directed Plaintiff to show cause, within fourteen (14) days, why Defendant Carillo should not be dismissed from the above-captioned action pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.  (Doc. No. 34.)

to perform basic functions or his institutional job assignment at Food Service."  (Id.)  On July 29, 2019, Plaintiff attended sick call and was seen by Physician's Assistant ("PA") Stoltz.  (Id.)  PA Stoltz "performed a simple evaluation and determined [there was a] potential emergency with Plaintiff's appendix."  (Id.)  Plaintiff was transferred to an outside emergency room, where "he was diagnosed with [a]cute [a]ppendicitis and subsequently had an emergency appendectomy performed."  (Id.)

On August 1, 2019, Plaintiff began the administrative remedy grievance process by submitting a BP-8 form to his counselor, Defendant Snyder.  (Id.)  Plaintiff alleges that Defendant Snyder failed to respond to his BP-8 remedy within the prescribed seven (7) day period.  (Id. at 11.)  On August 26, 2019, Plaintiff submitted a BP-9 to Defendant White.  (Id.) He alleges that following the initiation of administrative remedy procedures, Defendant Hofford generated an administrative note, dated August 31, 2019, describing her version of the July 28, 2019 encounter.  (Id.)  Plaintiff maintains that Defendant Hofford failed to "document any contact with Plaintiff until almost 32 days after the encounter and only after Plaintiff had begun his grievance procedures—contrary to institutional medical documentation guidelines and subject to lapse in proper recollection of events."  (Id.)  Plaintiff was interviewed by Defendant Lyons on October 14, 2019, "pertaining to an investigation into his allegations."  (Id.) Defendant Lyons told Plaintiff that Defendant Carillo, who had been acting lieutenant overnight on July 27, 2019, had submitted an affidavit stating that he had spoken to Plaintiff and monitored his condition that night.  (Id.)  Plaintiff told Defendant Lyons that this was not true because he had never spoken to Defendant Carillo.  (Id.)

Plaintiff avers that he has suffered "ongoing panic attacks, nervousness, and psychological distress."  (Id.)  He also has "requested and received ongoing psychological

counseling."  (Id.)  Based on the foregoing, Plaintiff asserts violations of his Fifth and Eighth

Amendment rights, as well as claims for negligence.  (Id.at 11-12.)  He seeks declaratory relief

as well as compensatory and punitive damages.  (Id. at 12-13.)

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of

the claim and the grounds upon which it rests.  See Phillips v. Cty. of Allegheny, 515 F.3d 224,

232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a

plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure

8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled

to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure

12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P.

12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all

factual allegations in the complaint and all reasonable inferences that can be drawn from them,

viewed in the light most favorable to the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 679

(2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  To prevent

dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims

are facially plausible.  See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203,

210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the

defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has

not 'show[n]' – 'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted).  The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

**B.  Bivens Action**

A Bivens civil rights action asserted under § 1331 is evaluated using the same standards applicable to a § 1983 civil rights action.  See Paton v. LaPrade, 524 F.2d 862, 871 (3d Cir.

1975); Veteto v. Miller, 829 F. Supp. 1486, 1492 (M.D. Pa. 1992).  To state a claim under Bivens, a plaintiff must allege that he was deprived of a federal right by a person acting under color of federal law.  See Young v. Keohane, 809 F. Supp. 1185, 1199 (M.D. Pa. 1992).

## III.   DISCUSSION

### A.   Plaintiff's Complaint

#### 1.   Timeliness of the Complaint

Moving Defendants first assert that Plaintiff's complaint is untimely filed and, therefore, subject to dismissal.  (Doc. No. 25 at 11-13.)  They maintain that "Plaintiff had six (6) months from February 28, 2020 to file his [c]omplaint in federal court following the notice from the Federal Bureau of Prisons, Northeast Regional Office on February 28, 2020."  (Id. at 12.)  As noted supra, however, Plaintiff has brought suit pursuant to both Bivens and the FTCA.  The Court, therefore, must consider the issue of timeliness with respect to each provision.

"The statute of limitations for a Bivens claim, as for claims arising under 42 U.S.C. § 1983, is borrowed from the forum state's personal injury statute."  See Brown v. Tollackson, 314 F. App'x 407, 408 (3d Cir. 2008).  In Pennsylvania, the statute of limitations for personal injury actions is two (2) years.  See 42 Pa. Cons. Stat. Ann. § 5524.  Moreover, the statute of limitations is tolled while a prisoner exhausts his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA").  See Pearson v. Sec'y Dep't of Corr., 775 F.3d 598, 603 (3d Cir. 2015).  Here, Plaintiff complaints of events that occurred over the course of July 27-29, 2019.  (Doc. No. 1 at 6.)  The exhibits attached to Plaintiff's complaint indicate that he submitted an informal resolution administrative remedy form—a BP-8—regarding the incident to his counselor on August 1, 2019.  (Id. at 21-22.)  He avers that he never received a response.  (Id. at 21.)  Nevertheless, Plaintiff continued to pursue his administrative remedies, and his appeal to

the Bureau of Prisons ("BOP")'s Central Office was denied on February 3, 2020.  (Id. at 23-32.)

The Court received Plaintiff's complaint on September 1, 2020.  Accordingly, because Plaintiff

is entitled to tolling of the two (2)-year statute of limitations for the period of time during which

he pursued his administrative remedies, and he filed his complaint seven (7) months after the

denial of his final appeal, his Bivens claims are timely.

      As for Plaintiff's FTCA claims, an FTCA action may not be instituted against the United

States "unless the claimant shall have first presented the claim to the appropriate Federal agency

and his claim shall have been finally denied by the agency in writing and sent by certified or

registered mail."  See 28 U.S.C. § 2675(a).  The claimant "must file an administrative claim

within two years of the tort; and second, the FTCA lawsuit must be initiated within six months of

the federal agency's denial of the administrative claim."  See Doe v. United States, 842 F. App'x

719, 721 (3d Cir. 2021) (citing 28 U.S.C. § 2401(b)).  "Both conditions must be met for the

FTCA action to be viable."  See id.

      In the instant case, Plaintiff submitted his administrative tort claim on August 21, 2019.

(Doc. No. 1 at 14-15.)  His claim was denied by the BOP on February 28, 2020, at which time

Plaintiff was notified of the six (6)-month deadline to file an action against the United States in

federal court.  (Id. at 17.)  Thus, Plaintiff had until August 28, 2020 to file a timely FTCA suit.

As noted supra, Plaintiff is no longer incarcerated, and the Court received his complaint on

September 1, 2020.  However, the complaint was submitted by another inmate at FCI

Allenwood, Philip Butler, on Plaintiff's behalf on August 28, 2020.  (Id. at 2.)  Inmate Butler

states that Plaintiff had recently been granted compassionate release and was "very strained to

complete [the] requirements of filing by the August 28th deadline."  (Id.)  Inmate Butler

maintains that Plaintiff is "relying on the prison mailbox rule—filed upon delivery to prison officials." (Id.)

Pursuant to the prison mailbox rule, a prisoner's document is deemed filed at the time he places it in the prison mailing system for forwarding to the Court. See Houston v. Lack, 487 U.S. 266, 276 (1988). As noted supra, inmate Butler submitted Plaintiff's complaint on his behalf after Plaintiff had been released from FCI Allenwood. Moving Defendants suggest that because a pro se party cannot represent another person in federal court, Plaintiff should not be granted the benefit of the mailbox rule to render his FTCA claims timely filed. (Doc. No. 25 at 12.) While an individual may represent himself pro se, a non-attorney may not represent other parties in federal court. See Collinsgru v. Palmyra Bd. of Educ., 161 F.3d 225, 232 (3d Cir. 1998), abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist., 550 U.S. 516 (2007).

The Court does not agree with Moving Defendants that inmate Butler has attempted to "represent" Plaintiff in this action. Inmate Butler indicates that Plaintiff received compassionate release "prior to the completion of this legal claim." (Doc. No. 1 at 2.) He avers that Plaintiff was "very strained" to meet the August 28, 2020 deadline because of "ongoing institutional lockdowns, modified operations due to COVID-19[,] and restrictions on law library, copy machine, [and] mailing label . . . access." (Id.) It appears that Plaintiff was unexpectedly released a month before the FTCA statute of limitations expired and entrusted his complaint to inmate Butler for administrative tasks such as finalizing copies and mailing the complaint to this Court.

The United States Court of Appeals for the Ninth Circuit has held that "the prison mailbox rule applies when a prisoner delivers a habeas petition on behalf of another prisoner to

8

prison authorities for forwarding to the clerk of court." <u>See</u> <u>Hernandez v. Spearman</u>, 764 F.3d 1071, 1076 (9th Cir. 2014). Likewise, the United States District Court for the Southern District of New York has granted a habeas petitioner the benefit of the mailbox rule even when his petition was mailed to the court by another inmate. <u>See</u> <u>Colon v. Ercole</u>, No. 09-cv-746, 2009 WL 2633657, at *4 (S.D.N.Y. Aug. 26, 2009). The Court finds that the reasoning of <u>Hernandez</u> and <u>Colon</u> applies to Plaintiff's situation. Although Plaintiff was released from custody, he had apparently entrusted inmate Butler to assist him with the preparation of his complaint and was frustrated from finalizing it before his release because of institutional restrictions imposed due to the COVID-19 pandemic. Given this, and given that the Court received Plaintiff's complaint merely two (2) days after the expiration of the FTCA limitations period, the Court finds that Plaintiff should not be penalized for relying upon another inmate to mail his complaint. The Court, therefore, declines to grant Moving Defendants' motion to dismiss on the basis that Plaintiff's FTCA claims are untimely.

### 2.     FTCA Claims

Plaintiff has brought suit against Moving Defendants and the United States of America pursuant to the FTCA. "While the FTCA provides jurisdiction for suits against the United States for torts allegedly committed by federal officials, the United States is the only proper defendant in a case brought under the FTCA." <u>Dorsey v. Peter</u>, No. 3:19-cv-113, 2021 WL 1209193, at *3 (M.D. Pa. Mar. 29, 2021) (citing <u>CNA v. United States</u>, 535 F.3d 132, 138 n.2 (3d Cir. 2008)). The Court, therefore, will dismiss Plaintiff's FTCA claims against Moving Defendants.

3.       **Bivens** Claims

   a.       **Fifth Amendment Claims**

Plaintiff asserts various violations of his Fifth Amendment due process rights.  (Doc. No. 1 at 12.)  He maintains that Defendants White, Creveling, Snyder, and Lyons violated his Fifth Amendment rights by failing to "investigate officers; including failure to interview or record statements, including recording [Plaintiff's] reporting of pain."  (Id.)  Plaintiff further alleges that Defendant Snyder violated his Fifth Amendment due process rights by denying him access to the administrative remedy provisions.[2]  (Id.)  Moving Defendants maintain that Bivens liability should not extend to Plaintiff's Fifth Amendment due process claims.  (Doc. No. 25 at 21-24.)

In 1971, the Supreme Court concluded that, even absent statutory authorization, it would enforce a damages remedy allowing individuals to be compensated after experiencing violations of the prohibition against unreasonable searches and seizures contained in the Fourth Amendment.  See Bivens, 403 U.S. at 397.  Subsequently, the Court extended the Bivens cause of action in two cases involving constitutional violations.  First, in Davis v. Passman, 442 U.S. 228, 249-49 (1979), the Court concluded that the Fifth Amendment's Due Process Clause provided a damages remedy to an administrative assistant claiming that a Congressman had discriminated against her on the basis of gender.  Next, the Court concluded that the Eighth Amendment's prohibition on cruel and unusual punishment provided a prisoner a cause of action for damages against prison officials who failed to treat his asthma.  See Carlson v. Green, 446

---

[2] Plaintiff also suggests that Defendant Hofford violated his Fifth Amendment due process rights by failing to "document [his] clinical encounter in a timely manner."  (Doc. No. 1 at 12.) Plaintiff's claim, however, concerns the medical care provided to him and is more properly analyzed under the Eighth Amendment.  See Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 260-61 (3d Cir. 2010) (noting that if a constitutional claim is covered by a specific constitutional provision, the claim must be analyzed under the standard applicable to that provision, not under substantive due process).

U.S. 14, 19 (1980).  "These three cases—<u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u>—represent the only

instances in which the Court has approved of an implied damages remedy under the Constitution

itself."  <u>See</u> <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843, 1855 (2017).  Over the years that followed, the

Supreme Court has "consistently refused to expand <u>Bivens</u> actions beyond these three specific

contexts."  <u>See</u> <u>Mack v. Yost</u>, 968 F.3d 311, 318 (3d Cir. 2020).

      In <u>Ziglar</u>, the Supreme Court noted that "expanding the <u>Bivens</u> remedy is now a

'disfavored' judicial activity."  <u>See</u> <u>Ziglar</u>, 137 S. Ct. at 1857.  As the Court stated in <u>Ziglar</u>:

> If the case is different in a meaningful way from previous <u>Bivens</u> cases decided by
> this Court, then the context is new.  Without endeavoring to create an exhaustive
> list of differences that are meaningful enough to make a given context a new one,
> some examples might prove instructive.  A case might differ in a meaningful way
> because of the rank of the officers involved; the constitutional right at issue; the
> generality or specificity of the official action; the extent of judicial guidance as to
> how an officer should respond to the problem or emergency to be confronted; the
> statutory or other legal mandate under which the officer was operating; the risk of
> disruptive intrusion by the Judiciary into the functioning of other branches; or the
> presence of potential special factors that previous *Bivens* cases did not consider.

<u>See</u> <u>id.</u> at 1859-60.  If the case presents a new context, a court must then consider whether any

alternative remedies exist.  <u>See</u> <u>id.</u>  Even absent alternative remedies, a court must also consider

whether special factors counsel against extending the <u>Bivens</u> remedy.  <u>See</u> <u>id.</u>

      The Third Circuit has recognized that inmates have "no constitutional right to a grievance

procedure" under the Fifth Amendment. <u>See</u> <u>Caldwell v. Beard</u>, 324 F. App'x 186, 189 (3d Cir.

2009).  Likewise, several courts have declined to extend <u>Bivens</u> to inmates' Fifth Amendment

due process claims.  <u>See</u>, <u>e.g.</u>, <u>Zavala v. Rios</u>, 721 F. App'x 720, 721-22 (9th Cir. 2018);

<u>Dockery v. Baltazar</u>, No. 4:20-cv-1676, 2021 WL 2014969, at *4 (M.D. Pa. May 19, 2021);

<u>Louis-El v. Ebbert</u>, 448 F. Supp. 3d 428, 439-41 (M.D. Pa. 2020); <u>Venizelos v. Bittenbender</u>,

No. 3:19-cv-1219, 2020 WL 7775457, at *6-8 (M.D. Pa. Dec. 8, 2020), <u>report</u> <u>and</u>

<u>recommendation</u> <u>adopted</u>, 2020 WL 7773905 (M.D. Pa. Dec. 30, 2020); <u>Simmons v. Maiorana</u>,

No. 3:16-cv-1083, 2019 WL 4410280, at *14-15 (M.D. Pa. Aug. 23, 2019).  In light of this precedent, Plaintiff's Fifth Amendment due process claims present new Bivens contexts.

Because Plaintiff's claims present new contexts, the Court must determine whether there are any special factors that counsel hesitation in extending Bivens.  See Mack, 968 F.3d at 317.  There may be many special factors, but two are "'particularly weighty': the availability of an alternative remedial structure and separation-of-powers concerns."  See id. at 320 (quoting Bistrian, 912 F.3d at 90).  The Supreme Court has noted that "administrative review mechanism can provide meaningful redress—such as internal investigations and employee discipline—even if they do not fully remedy the constitutional violation."  See Ziglar, 137 S. Ct. at 1859-60 (internal quotation marks omitted).  The fact that Plaintiff "was unsuccessful in utilizing the administrative process does not mean that such a process does not exist as an alternative remedy."  See Dockery, 2021 WL 2014969, at *3; see also Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 69 (2001) (noting that "[s]o long as the plaintiff had an avenue for some redress, bedrock principles of separations of powers foreclosed judicial imposition of a new substantive liability").  Likewise, courts have "afforded a level of deference to the decision making of prison officials," recognizing "day-to-day administrative decisions have been committed solely to the province of the BOP."  See Mack, 968 F.3d at 323; see also Railey v. Ebbert, 407 F. Supp. 3d 510, 523 (M.D. Pa. 2019) (noting that "the judicial restraint exercised in cases implicating the administrative of prisons is another factor weighing against extension of the Bivens remedy").

In sum, the Court finds that Plaintiff's Fifth Amendment due process claims present new contexts to which Bivens has not previously been extended.  Moreover, special factors counsel against extending Bivens to those new contexts.  The Court, therefore, declines to extend Bivens to Plaintiff's Fifth Amendment due process claims, and those claims will be dismissed.

b.      **Eighth Amendment Claims**

Finally, Plaintiff avers that Defendants Hofford, White, Creveling, Anderson, and Miller

violated his Eighth Amendment rights in relation to the medical care he was provided.  (Doc. No.

1 at 11-12.)  Specifically, Plaintiff maintains that Defendant Hofford violated his Eighth

Amendment rights by denying him medical care and by failing to document the clinical

encounter in a timely manner.  (Id. at 11-12.)  He alleges that Defendants White and Creveling

"allowed medical staff, including Defendant [Hofford], to create a practice, pattern[,] and custom

of denying inmates access to medical care by locking them up in the SHU, threatening them with

incident reports and outright refusal of care, even in medical emergencies."  (Id. at 12.)  Plaintiff

suggests further that Defendants Hofford, Anderson, and Miller violated his rights by failing to

have his pain assessed and managed in a timely manner.  (Id.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment of

prisoners.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994) (noting that "[t]o violate the Cruel

and Unusual Punishment Clause, a prison official must have a sufficiently culpable state of

mind. . . .  In prison-conditions cases that state of mind is one of 'deliberate indifference' to

inmate health or safety.").  An Eighth Amendment claim includes both objective and subjective

components.  See Wilson v. Seiter, 501 U.S. 294, 298 (1991).  Serious hardship to the prisoner is

required to satisfy the Eighth Amendment's objective component.  See id.  The subjective

component is met if the person or persons causing the deprivation acted with "a sufficiently

culpable state of mind."  See id.  In the context of medical care, the Eighth Amendment "requires

prison officials to provide basic medical treatment to those whom it has incarcerated."  See

Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  In order to establish an Eighth Amendment

deliberate indifference claim, a claimant must demonstrate "(i) a serious medical need, and (ii)

13

acts or omissions by prison officials that indicate deliberate indifference to that need." <u>See</u> <u>Natale v. Camden Cty. Corr. Facility</u>, 318 F.3d 575, 582 (3d Cir. 2003).

Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." <u>See</u> <u>Rouse</u>, 182 F.3d at 197. The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." <u>See</u> <u>Farmer</u>, 511 U.S. at 837. Circumstantial evidence may establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it. <u>See</u> <u>Beers-Capitol v. Whetzel</u>, 256 F.3d 120, 133 (3d Cir. 2001) (citing <u>Farmer</u>, 511 U.S. at 842). Moreover, "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." <u>See</u> <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 (3d Cir. 2004). Accordingly, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." <u>See</u> <u>id.</u>

The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical needs were serious. A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." <u>See</u> <u>Monmouth Cty. Corr. Inst. Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987). Not every condition is a serious medical need; instead, the serious medical need element contemplates a condition of urgency, namely, one that may produce death,

degeneration, or extreme pain.  See id.  Moreover, because only egregious acts or omissions violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation.  See White v. Napoleon, 897 F.2d 103, 108-10 (3d Cir. 1990); see also Estelle v. Gamble, 429 U.S. 97, 106 (1976) (noting that "medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Additionally, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients, see Young v. Kazmerski, 266 F. App'x 191, 194 (3d Cir. 2008), and a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment.  See White, 897 F.2d at 108-10.  Furthermore, it is well settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim.  See Taylor v. Norris, 36 F. App'x 228, 229 (8th Cir. 2002); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1024-25 (7th Cir. 1996); Sherrer v. Stephens, 50 F.3d 496, 497 (8th Cir.1994); Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); see also Pearson v. Prison Health Servs., 850 F.3d 528, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care.").

First, Plaintiff avers that Defendant Hofford violated his Eighth Amendment rights by failing to provide care for his pain.  As noted supra, Plaintiff alleges that on July 28, 2019, he went to the morning pill line, where "he collapsed in the lobby and once again in front of the Urgent Care station staffed by Defendant [Hofford]."  (Doc. No. 1 at 10.)  He avers that Defendant Hofford began screaming at him to get off the floor.  (Id.)  Plaintiff maintains that Defendant Hofford demanded that he "return to his housing unit with no treatment, evaluation, or

observation" and told him to return on July 29, 2019 for morning sick call.  (Id.)  He avers that two (2) hours later, Defendant Hofford again refused to treat him despite being made aware of Plaintiff's "ongoing pain and circumstances."  (Id.)  Finally, Plaintiff alleges that Defendant Hofford failed to document the contact with him until "almost 32 days after the encounter and only after Plaintiff had begun his grievance procedures—contrary to institutional medical documentation guidelines and subject to lapse in proper recollection of events."  (Id. at 11.)  Given these allegations, the Court concludes that Plaintiff has set forth a plausible Eighth Amendment claim against Defendant Hofford at this time.  The Court, therefore, will deny the motion to dismiss with respect to Plaintiff's Eighth Amendment claims against Defendant Hofford.

Defendants White and Creveling aver that Plaintiff's Eighth Amendment claims against them should be dismissed because the complaint contains no allegations as to how they "were directly involved with [Plaintiff's] medical care between July 27, 2019 and July 29, 2019 and/or were aware of Plaintiff's alleged delay in care."  (Doc. No. 25 at 19.)  It appears that Plaintiff seeks to hold Defendants White and Creveling liable based upon their supervisory positions. Supervisors "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."  See Iqbal, 556 U.S. at 676.  The Third Circuit has noted that there are two theories of supervisory liability applicable to claims brought pursuant to § 1983: (1) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under § 1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice[,] or custom which directly caused

16

[the] constitutional harm.'"  See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004).  With respect to the second theory of liability, the plaintiff must allege that "(1) existing policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice."  See Merring v. City of Carbondale, 558 F. Supp. 2d 540, 547 (M.D. Pa. 2008) (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)).

In his complaint, Plaintiff appears to suggest that Defendant White is liable for denying his grievance regarding his medical care.  (Doc. No. 1 at 11.)  The filing of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance, do not establish the involvement of officials and administrators in any underlying constitutional deprivation.  See Pressley v. Beard, 266 F. App'x. 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); Brooks v. Beard, 167 F. App'x. 923, 925 (3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to an inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation).  Consequently, any allegations asserted by Plaintiff in an attempt to establish liability against Defendant White based solely upon the substance of his respective response to Plaintiff's grievance do not support a constitutional claim.  See Alexander v. Gennarini, 144 F. App'x 924, 925 (3d Cir. 2005) (providing that involvement in the post-incident grievance process is not a basis for liability); see also Brooks, 167 F. App'x at 925.

17

Plaintiff also alleges that Defendants White and Creveling "allowed medical staff, including Defendant Hoffard, to create a practice, pattern[,] and custom of denying inmates access to medical care by locking them up in the SHU, threatening them with incident reports and outright refusal of care, even in medical emergencies." (Doc. No. 1 at 12.) Plaintiff also suggests that they failed to follow "BOP Policy Statement 6010.05 'providing medical services 24 hours per day, seven days per week, including emergency on-call procedures for hours that health care providers are not on site.'" (Id.) As an initial matter, even if Defendants violated BOP policies, such violations are not cognizable under Bivens. See Bullard v. Scism, 449 F. App'x 232, 235 (3d Cir. 2011) (noting that "even if the [BOP's] regulations were violated, its violation is not actionable"). Furthermore, Plaintiff fails to allege facts suggesting that Defendants White and Creveling were aware that any existing policy or practice created an unreasonable risk of constitutional injury and were deliberately indifferent to that risk. See Merring, 558 F. Supp. 2d at 547 (citing Sample, 885 F.2d at 1118).

Finally, Plaintiff suggests that Defendants Anderson and Miller violated his Eighth Amendment rights because Plaintiff's pain was not assessed and managed in a timely manner. (Doc. No. 1 at 12.) Plaintiff alleges that on July 27, 2019, he told Defendant Anderson that he was in pain, but Defendant Anderson told him that "no medical specialists were available and that he needed to return to his cubicle for 12AM count." (Id. at 10.) Plaintiff then sat in a chair in the shower area, doubled over in pain, during several of Defendant Anderson's rounds. (Id.) When Plaintiff went to the pill line on July 28, 2019, he told Defendant Hofford that Defendant Anderson was aware of the situation. (Id.) After returning to his housing unit without treatment, Plaintiff told Defendant Miller about his pain, and Defendant Miller called the medical department at Plaintiff's request. (Id.) Two (2) hours later, Defendant Miller told Plaintiff that

Defendant Hofford "had again refused to treat him." (Id.)  Given these allegations, the Court concludes that Plaintiff has set forth plausible Eighth Amendment claims against Defendants Anderson and Miller at this time.  See Spruill, 372 F.3d at 236 (noting that a non-medical official can be charged with deliberate indifference if he has reason to believe or knowledge that medical personnel are not treating a prisoner).  The Court, therefore, will deny the motion to dismiss with respect to Plaintiff's Eighth Amendment claims against Defendants Anderson and Miller.

### B.      Leave to Amend

Courts are cautioned that because of the applicable pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The federal rules allow for liberal amendment in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  See Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted).  The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment."  See id.  The Court must also determine that a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim.  See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002).  Based on the foregoing, the Court concludes that it would be futile to grant Plaintiff leave to file an amended complaint as to his FTCA claims against the individual Defendants, his Fifth Amendment due process claims, and his Eighth Amendment claims against Defendants White and Creveling.

IV.    **CONCLUSION**

For the foregoing reasons, the Court will grant in part and deny in part Defendants'

motion to dismiss.  (Doc. No. 24.)  The motion will be granted with respect to Plaintiff's FTCA

claims against the individual Defendants, his Fifth Amendment due process claims, and his

Eighth Amendment claims against Defendants White and Creveling.  The motion will be denied

with respect to Plaintiff's Eighth Amendment claims against Defendants Hofford, Anderson, and

Miller.  Plaintiff will not be permitted to file an amended complaint.  An appropriate Order

follows.