IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GRAYTZ MORRISON, | : | |
|     Plaintiff | : | No. 1:20-cv-01571 |
| | : | |
|     v. | : | (Judge Kane) |
| | : | |
| UNITED STATES OF AMERICA, et al., | : | |
|     Defendants | : | |

**MEMORANDUM**

Presently before the Court is the motion to dismiss and/or for summary judgment (Doc. No. 37) filed by Defendant United States of America. Pro se Plaintiff Graytz Morrison ("Plaintiff") has filed neither a response nor a motion seeking an extension of time to do so. Accordingly, because the time for responding has expired, the motion is ripe for disposition.

**I.    BACKGROUND**

    **A.    Procedural History**

Plaintiff, who was formerly incarcerated at the Federal Correctional Institution Allenwood ("FCI Allenwood") in White Deer, Pennsylvania, initiated the above-captioned action on September 1, 2020 by filing a complaint pursuant to the Federal Tort Claims Act ("FTCA") and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), ), raising claims alleging that he received inadequate medical care while incarcerated at FCI Allenwood. (Doc. No. 1.) Plaintiff named as Defendants the United States, Warden D.K. White ("White"), RN Larren Hofford ("Hofford"), Officer K. Anderson ("Anderson"), Officer J. Miller ("Miller"), United States Public Health Service Provider Creveling ("Creveling"), Counselor Christopher Snyder ("Snyder"), Special Investigative Agent J. Lyons ("Lyons"), and Lieutenant Carillo ("Carillo"). (Id.) In an Order dated September 2, 2020, the Court directed service of the complaint upon Defendants. (Doc. No. 5.)

After receiving several extensions of time, Defendants Anderson, Creveling, Lyons, Miller, Snyder, and White filed a motion to dismiss. (Doc. No. 24.) Defendant Hofford filed a motion to join in the motion to dismiss (Doc. No. 28), which the Court granted by Order dated June 22, 2021 (Doc. No. 33). In an Order dated June 22, 201, the Court directed Plaintiff to show cause why Defendant Carillo should not be dismissed pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. (Doc. No. 34.) Plaintiff did not respond; accordingly, in an Order dated July 12, 2021, the Court dismissed Defendant Carillo without prejudice. (Doc. No. 36.)

On July 7, 2021, Plaintiff filed what purports to be a certificate of merit. (Doc. No. 35.) The United States filed its motion to dismiss and/or for summary judgment on July 19, 2021. (Doc. No. 37.) That same day, the Court granted in part and denied in part the motion to dismiss filed by the other Defendants. (Doc. Nos. 38, 39.) Specifically, the Court granted the motion as to: (1) Plaintiff's FTCA claims against the individual Defendants; (2) his Fifth Amendment due process claims; and (3) his Eighth Amendment claims against Defendants White and Creveling. (Doc. No. 39.) The Court denied the motion with respect to Plaintiff's Eighth Amendment claims against Defendants Anderson, Miller, and Hofford. (Id.) The United States filed its statement of material facts (Doc. No. 42) and brief in support (Doc. No. 43) of its motion to dismiss and/or for summary judgment on August 2, 2021. As noted supra, Plaintiff has not filed a response.

**B.  Summary of Plaintiff's Complaint**

Plaintiff alleges that on July 27, 2019, around 7:30 p.m., he began "experiencing severe and persistent pains in his lower abdominal/stomach region." (Id. at 10.) Plaintiff told Defendant Anderson about his pain, who informed Plaintiff that "no medical specialists were available and that he needed to return to his cubicle for 12AM count." (Id.) Around the 2:00

a.m. count, Plaintiff went to the shower area "where he sat in a chair, doubled over in pain through the count [and] several of Defendant Anderson's unit rounds." (Id.)

On July 28, 2019, Plaintiff "struggled to ambulate to Health Services" for the pill line, "where he collapsed in the lobby and once again in front of the Urgent Care station staffed by Defendant Hoffard." (Id.) Inmate Gutierrez helped Plaintiff to his feet. (Id.) Defendant Hofford "immediately began screaming at Plaintiff, demanding he get off of the floor." (Id.) She asked if Plaintiff's unit officer knew he was at Health Services, and Plaintiff responded that Defendant Anderson was aware. (Id.) Defendant Hofford called the unit officer, who "confirmed his knowledge of the situation, but stated he had not sent [Plaintiff] to Health Services." (Id.) Plaintiff alleges that Defendant Hofford "demanded [that he] return to his housing unit with no treatment, evaluation, or observation." (Id.) He was told to return on July 29, 2019, for the morning sick call. (Id.) Plaintiff returned to his housing unit and informed Defendant Miller of his condition and pain. (Id.) Defendant Miller called the Medical Department, but two (2) hours later, he notified Plaintiff that Defendant Hofford had again refused to treat him. (Id.) Plaintiff remained bed-ridden, "suffering excruciating pain and unable to perform basic functions or his institutional job assignment at Food Service." (Id.) On July 29, 2019, Plaintiff attended sick call and was seen by Physician's Assistant ("PA") Stoltz. (Id.) PA Stoltz "performed a simple evaluation and determined [there was a] potential emergency with Plaintiff's appendix." (Id.) Plaintiff was transferred to an outside emergency room, where "he was diagnosed with [a]cute [a]ppendicitis and subsequently had an emergency appendectomy performed." (Id.)

On August 1, 2019, Plaintiff began the administrative remedy grievance process by submitting a BP-8 form to his counselor, Defendant Snyder. (Id.) Plaintiff alleges that

3

Defendant Snyder failed to respond to his BP-8 remedy within the prescribed seven (7) day period. (Id. at 11.) On August 26, 2019, Plaintiff submitted a BP-9 to Defendant White. (Id.) He alleges that following the initiation of administrative remedy procedures, Defendant Hofford generated an administrative note, dated August 31, 2019, describing her version of the July 28, 2019 encounter. (Id.) Plaintiff maintains that Defendant Hofford failed to "document any contact with Plaintiff until almost 32 days after the encounter and only after Plaintiff had begun his grievance procedures—contrary to institutional medical documentation guidelines and subject to lapse in proper recollection of events." (Id.) Plaintiff was interviewed by Defendant Lyons on October 14, 2019, "pertaining to an investigation into his allegations." (Id.) Defendant Lyons told Plaintiff that Defendant Carillo, who had been acting lieutenant overnight on July 27, 2019, had submitted an affidavit stating that he had spoken to Plaintiff and monitored his condition that night. (Id.) Plaintiff told Defendant Lyons that this was not true because he had never spoken to Defendant Carillo. (Id.)

Plaintiff avers that he has suffered "ongoing panic attacks, nervousness, and psychological distress." (Id.) He also has "requested and received ongoing psychological counseling." (Id.) Based on the foregoing, Plaintiff asserts violations of his Fifth and Eighth Amendment rights, as well as claims for negligence. (Id. at 11-12.) He seeks declaratory relief as well as compensatory and punitive damages. (Id. at 12-13.)

## II. LEGAL STANDARDS

### A. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)

The United States moves for dismissal of Plaintiff's complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, asserting that the Court lacks subject-matter jurisdiction over Plaintiff's FTCA claims. (Doc. No. 43 at 10-11.) The plaintiff bears the burden of

4

demonstrating that subject-matter jurisdiction exists.  See Lightfoot v. United States, 564 F.3d 625, 627 (3d Cir. 2009).  When ruling on a Rule 12(b)(1) motion, the Court "must accept as true the allegations contained in the plaintiff's complaint, except to the extent federal jurisdiction is dependent on certain facts."  See Fed. Realty Inv. Trust v. Juniper Props. Group, No. 99-3389, 2000 WL 45996, at *3 (E.D. Pa. Jan. 21, 2000 (citing Haydo v. Amerikohl Mining, Inc., 830 F.2d 494, 496 (3d Cir. 1987)).

      B.      **Motion for Summary Judgment**

Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law.  See id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party.  See Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988).  In order to avoid summary

judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings.  When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to interrogatories, or the like in order to demonstrate specific material facts that give rise to a genuine issue.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts."  See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).  When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case that it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  See Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

As noted supra, when determining whether an issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party.  See White, 862 F.2d at 59.  In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor.  See id. (citations omitted).  However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted."  See L.R. 56.1.  A party cannot evade these litigation responsibilities in this regard simply by citing

the fact that he is a pro se litigant. These rules apply with equal force to all parties. See Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (noting that pro se parties "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants").

### C. Bivens Action

A Bivens civil rights action asserted under § 1331 is evaluated using the same standards applicable to a § 1983 civil rights action. See Paton v. LaPrade, 524 F.2d 862, 871 (3d Cir. 1975); Veteto v. Miller, 829 F. Supp. 1486, 1492 (M.D. Pa. 1992). To state a claim under Bivens, a plaintiff must allege that he was deprived of a federal right by a person acting under color of federal law. See Young v. Keohane, 809 F. Supp. 1185, 1199 (M.D. Pa. 1992).

### III. STATEMENT OF MATERIAL FACTS[1]

On June 4, 2021, the United States "filed and served a Motion for Enlargement of Time to Respond to [Plaintiff's] Complaint in order to allow [Plaintiff] time to file the Certificate of Merit as required by Pa. R.C.P. 1042.3." (Doc. No. 42 ¶ 1.) This motion "specifically outlined the requirements of the Certificate of Merit." (Id. ¶ 2.) On June 7, 2021, the United States

---

[1] The Local Rules provide that in addition to the requirement that a party file a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." See M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. See id. Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Unless otherwise noted, the background herein is derived from the United States' Rule 56.1 statement of facts. (Doc. No. 42.) Plaintiff has not filed a response to the United States' statement of material facts in compliance with Local Rule 56.1. Accordingly, the Court deems the facts set forth by the United States to be undisputed. See Fed. R. Civ. P. 56(e)(2); M.D. Pa. L.R. 56.1; United States v. Alberto, No. 3:18-cv-1014, 2020 WL 730316, at *2 (M.D. Pa. Feb. 13, 2020) (concluding that the "[f]ailure to file this [responsive statement of material facts] results in admission of the moving party's statement of facts").

"served [Plaintiff] with a letter, via Certified Mail, Return Receipt Requested, notifying him regarding the requirement to file a Certificate of Merit pursuant to Pa. R. Civ. P. 1042.3." (Id. ¶ 3.) This letter also provided notice of the United States' "intention to move for dismissal of [Plaintiff's] medical negligence claims if he did not file a certificate of merit within thirty days." (Id.) On July 7, 2021, Plaintiff served the United States with his "Certificate of Merit Filing Pursuant to Pennsylvania Rule 1042.3." (Id. ¶ 4.) This Certificate of Merit states that:

> the Court must accept all factual allegations in a complaint as true and take . . . them in the light most favorable to Plaintiff." Because Plaintiff proceeds [pro] se, his pleading is liberally construed and his . . . complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."

(Id. ¶ 5) (quoting Erickson v. Pardus, 551 U.S. 89, 94).

## IV.  DISCUSSION

The United States asserts that the Court should grant its motion to dismiss and/or for summary judgment because: (1) Plaintiff failed to file a certificate of merit that complies with Rule 1042.3 of the Pennsylvania Rules of Civil Procedure; and (2) Plaintiff "failed to timely file medical negligence claims within six months as required by the FTCA and where the prison mailbox rule does not apply to a former inmate." (Doc. No. 43 at 10.) The Court considers each argument below.

### A.   Timeliness of Plaintiff's FTCA Claims

The United States asserts that the Court should dismiss Plaintiff's FTCA claims as untimely because he failed to file them "within six months as required by the FTCA and where the prison mailbox rule does not apply to a former inmate." (Doc. No. 43 at 19.) An FTCA action may not be instituted against the United States "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." See 28 U.S.C.

§ 2675(a). The claimant "must file an administrative claim within two years of the tort; and second, the FTCA lawsuit must be initiated within six months of the federal agency's denial of the administrative claim." See Doe v. United States, 842 F. App'x 719, 721 (3d Cir. 2021) (citing 28 U.S.C. § 2401(b)). "Both conditions must be met for the FTCA action to be viable." See id.

In the instant case, Plaintiff submitted his administrative tort claim on August 21, 2019. (Doc. No. 1 at 14-15.) His claim was denied by the BOP on February 28, 2020, at which time Plaintiff was notified of the six (6)-month deadline to file an action against the United States in federal court. (Id. at 17.) Thus, Plaintiff had until August 28, 2020 to file a timely FTCA suit. The BOP's inmate locator service indicates that Plaintiff was released from custody on July 28, 2020.[2] The Court received his complaint on September 1, 2020. However, the complaint was submitted by another inmate at FCI Allenwood, Philip Butler, on Plaintiff's behalf on August 28, 2020. (Id. at 2.) Inmate Butler states that Plaintiff had recently been granted compassionate release and was "very strained to complete [the] requirements of filing by the August 28th deadline." (Id.) Inmate Butler maintains that Plaintiff is "relying on the prison mailbox rule— filed upon delivery to prison officials." (Id.)

Pursuant to the prison mailbox rule, a prisoner's document is deemed filed at the time he places it in the prison mailing system for forwarding to the Court. See, e.g., Pearson v. Sec'y Dep't of Corr., 775 F.3d 598, 601 n.2 (3d Cir. 2015); Houston v. Lack, 487 U.S. 266, 276 (1988). Plaintiff, however, was released from custody one (1) month before his complaint was placed in the mailing system at FCI Allenwood for mailing to this Court. Thus, because Plaintiff was "not restricted by the same lack of control as pro se prisoners" at the time his complaint was

---

[2] https://www.bop.gov/inmateloc/

mailed, the prison mailbox rule cannot apply to render his complaint timely filed.[3]  See Dwyer v. United States, No. 13-cv-7218, 2014 WL 2587499, at *3 (D.N.J. June 9, 2014); see also United States v. Reed, No. 17-369, 2020 WL 1625626, at *4 (E.D. Pa. Apr. 2, 2020).  For that reason alone, the Court will grant the United States' motion to dismiss and/or for summary judgment. Nevertheless, the Court addresses the United States' argument regarding Plaintiff's failure to file an adequate certificate of merit below.

### B. Failure to File Adequate Certificate of Merit

Alternatively, the United States maintains that dismissal of Plaintiff's FTCA claims is proper because Plaintiff failed to file a certificate of merit that complies with Rule 1042.3 of the Pennsylvania Rules of Civil Procedure.  (Doc. No. 43 at 13-19.)  The FTCA "provides a

---

[3] The Court recognizes that in its previous Memorandum addressing the individual Defendants' motion to dismiss, the Court granted Plaintiff the benefit of the mailbox rule and declined to grant the motion to dismiss on the basis that Plaintiff's FTCA claims were untimely.  See Morrison v. United States, No. 1:20-cv-1571, 2021 WL 3033829, at *4 (M.D. Pa. July 19, 2021). In doing so, the Court noted that the United States Court of Appeals for the Ninth Circuit, as well as the United States District Court for the Southern District of New York, have concluded that the prison mailbox rule applies even when habeas petitioners have other prisoners mail their petitions to the court for filing.  See Hernandez v. Spearman, 764 F.3d 1071, 1076 (9th Cir. 2014); Colon v. Ercole, No. 09-cv-746, 2009 WL 2633657, at *4 (S.D.N.Y. Aug. 26, 2009).

Upon further review, however, the Court notes that the Hernandez court recognized that "applying the prison mailbox rule to petitions mailed from prison to third parties 'would allow prisoners to mail habeas petitions to third parties for substantive revisions while claiming their earlier mailing date as the filing date,' thus 'circumvent[ing] statutes of limitations."  See Hernandez, 764 F.3d at 1075 (quoting Cook v. Stegall, 295 F.3d 517, 521 (6th Cir. 2002)). Given this reasoning, the Court agrees with the United States that, conversely, allowing a former prisoner-plaintiff to rely upon a prisoner who is not a party to the case to mail a document for filing would allow the former prisoners to always circumvent statutes of limitations.  As the United States notes, Plaintiff had been released from custody a month before inmate Butler mailed his complaint and had sufficient time to either mail his complaint to the Court or receive Court approval to use the Electronic Case Filing ("ECF") system.  The Court's conclusion, however, does not warrant reconsideration of the prior dismissal of Plaintiff's FTCA claims against the individual Defendants because, as noted in the Court's previous Memorandum, such claims can only be maintained against the United States.  See Morrison, 2021 WL 3033829, at *4 (citations omitted).

10

mechanism for bringing a state law tort action against the federal government in federal court," and the "extent of the United States' liability under the FTCA is generally determined by reference to state law." See In re Orthopedic Bone Screw Prod. Liab. Litig., 264 F.3d 344, 362 (3d Cir. 2001) (quoting Molzof v. United States, 502 U.S. 301, 305 (1992)). In the instant case, Plaintiff asserts claims of medical negligence under the FTCA. Where a federal court is presented with a claim brought under the FTCA, it applies the law of the state in which the alleged tortious conduct occurred. See 28 U.S.C. § 1346(b). In this case, the allegedly tortious conduct occurred in Pennsylvania, and, therefore, the Court refers to Pennsylvania tort law to assess the extent of the United States' potential liability for Plaintiff's medical negligence claims. To maintain a negligence claim under Pennsylvania law, a plaintiff must demonstrate: "(1) a duty on the part of the defendant to conform to a certain standard of conduct with respect to the plaintiff; (2) a breach of that duty by the defendant; (3) a causal connection between the defendant's conduct and the injury suffered by the plaintiff; and (4) actual loss or damage suffered by the plaintiff." See Harris v. Oz Directional Drilling, Inc., No. 3:13-cv-2580, 2016 WL 4578150, at *3 (M.D. Pa. June 30, 2016), report and recommendation adopted, 2016 WL 4698635 (M.D. Pa. July 19, 2016). Furthermore, to maintain a prima facie case of medical negligence, "as a general rule, a plaintiff has the burden of presenting expert opinions that the alleged act or omission of the defendant physician or hospital personnel fell below the appropriate standard of care in the community, and that the negligent conduct caused the injuries for which recovery is sought." See Simpson v. Bureau of Prisons, No. 02-2213, 2005 WL 2387631, at *5 (M.D. Pa. Sept. 28, 2005).

Under Rule 1042.3 of the Pennsylvania Rules of Civil Procedure, plaintiffs seeking to raise medical negligence claims must file a valid certificate of merit. That rule states in pertinent part:

> (a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either []
>
> (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or
>
> (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or
>
> (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Pa. R. Civ. P. 1042.3. The requirements of Rule 1042.3 are substantive in nature and, therefore, federal courts in Pennsylvania must apply these prerequisites of Pennsylvania law when assessing the merits of a medical malpractice claim. See Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 262-65 (3d Cir. 2011); Iwanejko v. Cohen & Grigsby, P.C., 249 F. App'x 938, 944 (3d Cir. 2007). This requirement applies with equal force to counseled complaints and to pro se medical malpractice actions asserted under state law. See Hodge v. Dep't of Justice, 372 F. App'x 264, 267 (3d Cir. 2010) (affirming district court's dismissal of medical negligence claim for failure to file a certificate of merit); Levi v. Lappin, No. 07-1839, 2009 WL 1770146, at *1 (M.D. Pa. June 22, 2009).

The Supreme Court of Pennsylvania has noted that because "the negligence of a physician encompasses matters not within the ordinary knowledge and experience of laypersons

12

a medical malpractice plaintiff [typically] must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of the injury." See Toogood v. Owen J. Rogal, D.D.S., P.C., 824 A.2d 1140, 1145 (Pa. 2003). A very narrow exception applies "where the matter is so simple or the lack of skill or care so obvious as to be within the range of experience and comprehension of even non-professional persons.' See Hightower-Warren v. Silk, 698 A.2d 52, 54 n.1 (Pa. 1997). However, three (3) conditions must be met before the doctrine of res ipsa loquitur may be invoked:

> (a) either a lay person is able to determine as a matter of common knowledge, or an expert testifies, that the result which has occurred does not ordinary occur in the absence of negligence; (b) the agent or instrumentality causing the harm was within the exclusive control of the defendant; and (c) the evidence offered is sufficient to remove the causation question from the realm of conjecture, but not so substantial that it provides a full and complete explanation of the event.

See Toogood, 824 A.2d at 1149-50. In the instant case, the Court agrees with the United States that Plaintiff requires expert testimony to establish that BOP medical staff at FCI Allenwood were negligent with respect to providing medical care for his appendix. See Koch v. Gorrilla, 552 F.2d 1170, 1175 (6th Cir. 1977) (concluding that expert testimony was required with respect to the plaintiff's medical malpractice claim alleging improper treatment of appendicitis); Shorter v. City of Las Vegas, No. 2:16-cv-971-KDJ-CWH, 2019 WL 266285, at *4 (D. Nev. Jan. 17, 2019) (concluding same).

The Court further agrees with the United States that Plaintiff's certificate of merit (Doc. No. 35) fails to comply with the requirements of Rule 1042.3. Plaintiff indicates that the exhibits attached to his certificate of merit "substantiate the merits of the claims brought against the Defendants." (Id. at 1.) Plaintiff's purported certificate of merit, however, does not include a written statement from an "appropriate licensed professional" that "there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or

13

work that is the subject of the complaint, fell outside acceptable professional standards." See Pa. R. Civ. P. 1042.3(a). Instead, Plaintiff has submitted copies of his medical records from the Bureau of Prisons ("BOP"), a written statement he provided to Defendant Lyons, and copies of his communications with psychologist Dr. Schmidt. (Doc. No. 35-1.) None of these documents meet the requirements of Rule 104.23(a)(1).[4]

The usual consequence for failing to file a certificate of merit that complies with Rule 1042.3 is dismissal of the claim without prejudice. See Booker v. United States, 366 F. App'x 425, 427 (3d Cir. 2010). However, dismissal with prejudice is proper when the statute of limitations has run on the claim. See Smith v. Bolava, No. 14-cv-5753, 2015 WL 2399134, at *3 (E.D. Pa. May 20, 2015) (quoting Booker, 366 F. App'x at 427). Pennsylvania's statute of limitations for medical malpractice claims is two (2) years. See 42 Pa. Cons. Stat. Ann. § 5524(7). In the instant case, the allegations in Plaintiff's complaint concern events that occurred during July 27-29, 2019. (Doc. No. 1.) Thus, the statute of limitations has run on Plaintiff's medical malpractice claim, and it is subject to dismissal with prejudice. See Smith, 2015 WL 2399134, at *3. The Court, therefore, will grant the United States' motion (Doc. No. 37) on the basis that Plaintiff has failed to file a certificate of merit that complies with Rule 1042.3.

## V.  CONCLUSION

For the foregoing reasons, the Court will grant the United States' motion to dismiss and/or for summary judgment (Doc. No. 37). The above-captioned action, therefore, will

---

[4] Moreover, nowhere in Plaintiff's certificate of merit does he state that expert testimony is unnecessary, which would satisfy the requirements of Rule 1042.3(a)(3).

proceed only as to Plaintiff's Eighth Amendment claims against Defendants Hofford, Anderson, and Miller.  An appropriate Order follows.