**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GRAYTZ MORRISON,** | : | |
| **Plaintiff** | : | **No. 1:20-cv-01571** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **UNITED STATES OF AMERICA, <u>et</u> <u>al</u>.,** | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Pending before the Court are Defendants Kyle Anderson ("Anderson"), Justin Miller ("Miller"), and Larren Hofford ("Hofford")'s motions for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. Nos. 50, 52.) Also pending before the Court is Defendants Anderson and Miller's motion to file certain documents under seal, which they filed in connection with their motion for summary judgment. (Doc. No. 48.) For the reasons set forth below, Defendants Anderson and Miller's motion for summary judgment will be granted, Defendant Hofford's motion for summary judgment will be denied, and Defendants Anderson and Miller's motion to file certain documents under seal will also be denied.

**I.    BACKGROUND**

**A.    Procedural Background**

Plaintiff Graytz Morrison ("Plaintiff") is a former federal prisoner who was previously incarcerated at the Low Security Allenwood Federal Correctional Institution in White Deer, Pennsylvania ("LSCI Allenwood"). (Doc. No. 1.) Plaintiff was released from LSCI Allenwood on July 28, 2020. <u>See</u> Federal Bureau of Prisons, Find an Inmate, <u>available</u> <u>at</u> https://www.bop.gov/inmateloc/ (demonstrating that Plaintiff was "Released On: 07/28/2020").

On July 27, 2020,[1] the day before Plaintiff was released, he commenced the above-captioned action by filing a complaint pursuant to the Federal Tort Claims Act ("FTCA") and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) ("Bivens"), asserting claims that he had received inadequate medical care while he was incarcerated there.  (Doc. No. 1.)  Plaintiff named as defendants Anderson, Miller, Hofford, the United States of America ("United States"), Warden D.K. White ("White"), United States Public Health Service Provider Creveling ("Creveling"), Correctional Counselor Christopher Snyder ("Snyder"), Special Investigative Agent J. Lyons ("Lyons"), and Lieutenant Carillo ("Carillo"). (Id.)  In an Order dated September 2, 2020, the Court directed service of the complaint upon Defendants.  (Doc. No. 5.)

After receiving several extensions of time, Defendants Anderson, Miller, White, Creveling, Snyder, and Lyons filed a motion to dismiss Plaintiff's complaint.  (Doc. No. 24.) Defendant Hofford subsequently filed a motion to join in the motion to dismiss (Doc. No. 28), which the Court granted (Doc. No. 33).  On June 22, 2021, the Court directed Plaintiff to show cause why Defendant Carillo should not be dismissed pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.  (Doc. No. 34.)  Although Plaintiff filed what purported to be a certificate of merit (Doc. No. 35), Plaintiff did not respond to the Court's show cause Order and, accordingly, on July 12, 2021, the Court dismissed Defendant Carillo from this action without prejudice (Doc. No. 36).

---

[1]  Although the Court did not receive Plaintiff's complaint until September 1, 2020, his complaint is dated July 27, 2020 (Doc. No. 1 at 8) and, thus, is deemed filed as of that date.  See Pabon v. Mahanoy, 654 F.3d 385, 391 n.8 (3d Cir. 2011) (noting that "[t]he federal 'prisoner mailbox rule' provides that a document is deemed filed on the date it is given to prison officials for mailing (citing Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998))).

The United States filed its motion to dismiss and/or for summary judgment on July 19, 2021 (Doc. No. 37), followed by its statement of material facts (Doc. No. 42) and supporting brief (Doc. No. 43).   That same day, the Court granted in part and denied in part the motion to dismiss previously filed by Defendants Anderson, Miller, White, Creveling, Snyder, and Lyons. (Doc. Nos. 38, 39.)  More specifically, the Court granted the motion as to: (1) Plaintiff's FTCA claims against the individual Defendants; (2) Plaintiff's Fifth Amendment due process claims; and (3) Plaintiff's Eighth Amendment claims against Defendants White and Creveling.  (Id.) The Court dismissed these claims with prejudice.  (Id.)  However, the Court denied the motion with respect to Plaintiff's Eighth Amendment claims against Defendants Anderson, Miller, and Hofford.  (Id.)

On July 26, 2021, Defendant Hofford filed her answer to the complaint (Doc. No. 40), and, on August 2, 2021, Defendants Anderson and Miller filed their collective answer to the complaint (Doc. No. 41).  Thereafter, on September 15, 2021, the Court granted the United States' motion to dismiss and/or for summary judgment (Doc. No. 37) and dismissed with prejudice Plaintiff's FTCA claims against the United States.  (Doc. Nos. 44, 45.)

On February 8, 2022, the Court, observing that Defendants Hofford, Anderson, and Miller had filed answers to the complaint and that the six (6)-month period for discovery had closed without a request from the parties for additional time to complete such discovery (Doc. No. 39 at ¶ 4), ordered the parties to file any dispositive motions on or before April 4, 2022. (Doc. No. 47.)  In accordance with that Order, Defendants Anderson, Miller, and Hofford timely filed their motions for summary judgment (Doc. Nos. 50, 52), as well as their supporting briefs (Doc. Nos. 51, 53) and statements of material facts (Doc. Nos. 50-1, 52-1).

3

In addition to their motion for summary judgment, Defendants Anderson and Miller have also filed a motion seeking to file certain documents under seal (Doc. No. 48), along with the documents that they seek to file under seal (Doc. No. 49).  On April 22, 2022, the Court, observing that Defendants Anderson and Miller had neither filed a brief in support of their motion to seal, nor explained why their documents should remain under seal pursuant to the standard articulated in In re: Avandia Marketing Sales Practices and Products Liability Litig., 924 F.3d 662 (3d Cir. 2019) ("Avandia"), directed them to show cause why the documents should remain under seal pursuant to the Avandia standard.  (Doc. No. 54.)   In response to the Court's Order, Defendants Anderson and Miller filed their brief in support on April 29, 2022.  (Doc. No. 55.)

As reflected by the Court's docket, Plaintiff has neither filed a response to Defendants Anderson, Miller, and Hofford's pending motions, nor sought an extension of time in which to do so.  Thus, Defendants Anderson, Miller, and Hofford's pending motions are ripe for the Court's resolution.

**B.    Factual Background**

In accordance with the Court's Local Rules, Defendants Anderson, Miller, and Hofford have filed statements of material facts in support of their respective motions for summary judgment.  (Doc. Nos. 50-1, 52-1.)  Plaintiff did not file his own statements of material facts, responding to the numbered paragraphs set forth in the Defendants' statements.  Thus, under the Court's Local Rules, Defendants Anderson, Miller, and Hofford's facts are deemed admitted since:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement. This Local Rule serves several purposes.  First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute.  Second, it affixes the burden imposed by Federal Rule

4

of Civil Procedure 56(e), as recognized in Celotex Corp. v. Catrett, on the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designated specific facts showing that there is a genuine issue for trial.' 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotations omitted) (emphasis added).

See Williams v. Gavins, No. 1:13-cv-0387, 2015 WL 65080, at *5 (M.D. Pa. Jan. 5, 2015), aff'd sub nom. Williams v. Gavin, 640 F. App'x 152 (3d Cir. 2016) (unpublished) (emphasis in original) (citation omitted).

Accordingly, the material facts in this Memorandum are derived from Defendants Anderson, Miller, and Hofford's statements of material facts. (Doc. Nos. 50-1, 52-1.) That being said, however, the Court has conducted a thorough and impartial review of the record in this matter. To the extent that there are any disputed issues of material fact that are relevant to the Defendants' motions for summary judgment, the Court expressly notes such disputes herein.[2]

Sometime around 12:00 a.m. on July 28, 2019, while Defendant Anderson was performing rounds at LSCI Allenwood, Plaintiff, who was in the bathroom, was trying to figure out what was wrong with himself and told Defendant Anderson that he did not "feel good" and that "something was wrong with his stomach." (Doc. No. 50-1 ¶ 1; Doc. No. 52-1 ¶ 2.) In response to Plaintiff's complaints, Defendant Anderson informed Plaintiff that there were no medical staff available at that time, and also informed the Operations Lieutenant that Plaintiff was having stomach pain and wished to seek medical attention. (Doc. No. 50-1 ¶ 2; Doc. No. 52-1 ¶ 3.) At one point Plaintiff, who was standing and leaning against a wall, also told Defendant Anderson that he was in pain. (Doc. No. 50-1 ¶ 3; Doc. No. 52-1 ¶ 4.)

---

[2] Defendants Anderson and Miller's statement of material facts (Doc. No. 50-1) and Defendant Hofford's statement of material facts (Doc. No. 52-1) entirely overlap and, thus, the Court is able to set forth their facts together in one section.

5

After the 12:00 a.m. count, Plaintiff asked Defendant Anderson, who was in his office, if he could sit in the shower, which Defendant Anderson allowed him to do.  (Doc. No. 50-1 ¶ 4.)  Defendant Anderson observed Plaintiff doubled over in a chair with hot water running over him.  (Id. ¶ 5.)  Defendant Anderson performed welfare checks on Plaintiff every fifteen (15) minutes until he was relieved from duty.  (Id. ¶ 6; Doc. No. 52-1 ¶ 5.)  During his welfare checks of Plaintiff, Defendant Anderson asked if Plaintiff's pain level changed, and Plaintiff replied that it was the same on every check.  (Doc. No. 50-1 ¶ 8; Doc. No. 52-1 ¶ 6.)  Plaintiff does not recall telling Defendant Anderson, at any point, that he felt like he was going to die.  (Doc. No. 50-1 ¶ 9; Doc. No. 52-1 ¶ 7.)

Subsequently on that same day (i.e., July 28, 2019), Plaintiff went to medical, also referred to as "Health Services,"[3] where he was seen by Defendant Hofford, a registered nurse.  (Doc. No. 50-1 ¶¶ 10, 11, 45, 46.)  According to Defendant Hofford, she performed a visual medical assessment of Plaintiff and instructed him to return to his unit and to report to medical for sick call the following day on July 29, 2019.  (Id. ¶ 46; Doc. No. 52-1 ¶ 24.)  Also according to Defendant Hofford, she instructed Plaintiff to notify his unit officer to call medical if his pain increased or got worse.  (Doc. No. 50-1 ¶ 47; Doc. No. 52-1 ¶ 25.)

While Plaintiff was at medical, Defendant Hofford called Defendant Anderson.  (Doc. No. 50-1 ¶¶ 10, 11, 45; Doc. No. 52-1 ¶ 23.)  Defendant Anderson recalled speaking with someone from medical on July 28, 2019, while Plaintiff was there, about whether Defendant

---

[3]  LSCI Allenwood's Health Services Unit provides twenty-four (24)-hour medical coverage that includes in-house mid-level practitioner/paramedic/RN coverage for sixteen (16) hours per day.  (Doc. No. 50-1 ¶ 43; Doc. No. 52-1 ¶ 21.)  Should in-house coverage not be available, then an on-call mid-level practitioner (physician assistant/nurse practitioner) will be available via cell phone.  (Doc. No. 50-1 ¶ 44; Doc. No. 52-1 ¶ 22.)

Anderson had sent Plaintiff to Health Services or whether Plaintiff went to Health Services on his own. (Doc. No. 50-1 ¶ 11.)  Defendant Anderson does not recall his response to this question. (Id.)  Plaintiff testified at his deposition that he did not hear exactly what Defendant Anderson said to Defendant Hofford on the phone, only that Defendant Anderson was aware that Plaintiff was not feeling well. (Id. ¶ 12; Doc. No. 52-1 ¶ 8.)  Plaintiff states in his affidavit, however, that he could not hear what Defendant Anderson said to Defendant Hofford. (Doc. No. 50-1 ¶ 12.)

Defendant Anderson did not prevent Plaintiff from going to medical (id. ¶ 16), did not have any objections to Plaintiff being at medical that day (id. ¶ 13), and did not have Plaintiff written up for being there (id.). According to the Brady A Unit Log, Defendant Anderson advised Plaintiff to go to medical for sick call. (Id. ¶ 14.)  Plaintiff does not know if Defendant Anderson tried calling medical during this relevant period of time. (Id. ¶ 16.)  Plaintiff also confirmed that Defendant Anderson is not an EMT, nurse, or physician. (Id. ¶ 15.)

Although Plaintiff is not sure if he saw Defendant Anderson when he returned from medical (id. ¶ 17), Plaintiff recalls speaking with Defendant Miller who "was trying to be helpful." (Id. ¶ 18.)  After speaking with Plaintiff, Defendant Miller stated that he would call Defendant Hofford and try to help Plaintiff—which Plaintiff "was glad about[.]" (Id. ¶ 19.)  At approximately 8:00 a.m. on July 28, 2019, in response to Plaintiff's complaints that he was in severe pain, Defendant Miller called medical and was informed by Defendant Hofford that she was not going to see Plaintiff because she had just spoken with him in Health Services. (Id. ¶ 20; Doc. No. 52-1 ¶ 9.)

Plaintiff was subsequently informed by his cellmate that Defendant Miller wanted to speak with him. (Doc. No. 50-1 ¶ 21.)  Plaintiff walked to Defendant Miller, who explained that

he "tried" (id. ¶ 23), but informed Plaintiff that Defendant Hofford would not see him and that he should go to the pill line and emergency sick call in the morning (id. ¶ 22).  Plaintiff generally claims that Defendant Miller was decent in his approach with him, that Defendant Miller was genuine, and that Defendant Miller may have informed him that if his condition got worse, he should go back to medical.  (Id. ¶ 24.)

When Plaintiff spoke with Defendant Miller during these occasions, Plaintiff was leaning against the door and holding his stomach, but standing in the correctional officers' office.  (Id. ¶ 25.)  In addition, Plaintiff told Defendant Miller that he did not feel well, but he is uncertain if he ever told Defendant Miller that he felt like he was going to die or "to that real degree of how [he] felt."  (Id. ¶ 26; Doc. No. 52-1 ¶ 10.)

Ultimately, Defendant Miller told Plaintiff that he could not allow Plaintiff to go to medical because Defendant Hofford had specifically stated that Plaintiff "cannot" be there and that he could wait for emergency sick call in the morning.  (Doc. No. 50-1 ¶ 27; Doc. No. 52-1 ¶ 11.)  It was unclear to Plaintiff if he needed permission from a correctional officer to go to the pill line for his condition.  (Doc. No. 50-1 ¶ 28.)  Plaintiff recalled that Defendant Miller, who was the most genuine, may have come to his cell to check on him at one point.  (Id. ¶ 29.)  Similar to Defendant Anderson, Plaintiff confirmed that Defendant Miller is not an EMT, nurse, or medical professional of any kind.  (Id. ¶ 30.)

Defendant Hofford confirmed that she was contacted by Defendant Miller after Plaintiff departed medical and that she informed Defendant Miller that she was not going to see Plaintiff because she had just spoken with him prior to the phone call.  (Id. ¶ 48; Doc. No. 52-1 ¶ 26.)  According to Defendant Hofford, she provided Plaintiff the opportunity to fully explain his medical concerns, but ultimately, based upon the symptoms he described, as well as her own

observations, believed that no further medical assessment or intervention was warranted.  (Doc. No. 50-1 ¶ 49; Doc. No. 52-1 ¶ 27.)

Plaintiff believes that the last time he saw Defendant Miller was right before Plaintiff went to his position with food services on July 28, 2019.  (Id. ¶ 31.)  At approximately 1:59 a.m. on July 28, 2019, Operations Lieutenant, Lieutenant Tomas Carrillo ("Lt. Carrillo") spoke with Plaintiff, who was having stomach pain but stated that he could wait to be seen by medical staff when they arrived at 6:00 a.m.  (Id. ¶ 32; Doc. No. 52-1 ¶ 12.)  Lt. Carrillo does not recall contacting the on-call physician because Plaintiff said he was okay to wait until medical would arrive at 6:00 a.m.  (Doc. No. 50-1 ¶ 33; Doc. No. 52-1 ¶ 13.)

On that same date, at approximately 5:10 a.m., Lt. Carrillo did a health and welfare check on Plaintiff who informed Lt. Carrillo that he was feeling okay and would go to sick call when it opened at 6:00 a.m.  (Doc. No. 50-1 ¶ 34; Doc. No. 52-1 ¶ 14.)  Lt. Carrillo called Health Services when it opened based upon Plaintiff's statements to ensure Plaintiff would be seen. (Doc. No. 50-1 ¶ 35; Doc. No. 52-1 ¶ 15.)   However, Lt. Carrillo is not sure with whom he spoke at Health Services.  (Doc. No. 50-1 ¶ 35.)

Despite trying to vomit, Plaintiff did not get sick at any point.  (Id. ¶ 36.)  In addition, Plaintiff took fiber pills to make himself go to the bathroom, which he believed helped.  (Id. ¶ 37; Doc. No. 52-1 ¶ 16.)  By the morning of July 29, 2019, Plaintiff, whose pain had lessened, went to see Physician's Assistant ("PA") Stoltz in medical.  (Doc. No. 50-1 ¶ 38; Doc. No. 52-1 ¶ 17.)   When initially speaking with Plaintiff, PA Stoltz explained that he did not know if Plaintiff's condition was appendicitis, but thought that it could be.  (Doc. No. 50-1 ¶ 39; Doc. No. 52-1 ¶ 18.)

PA Stoltz then had Plaintiff lay down, and PA Stoltz performed an examination of Plaintiff's stomach by touching various points to determine if Plaintiff had appendicitis. (Doc. No. 50-1 ¶ 40.)  Plaintiff testified at his deposition that, after PA Stoltz performed this examination, he explained to Plaintiff that he had appendicitis and that he would need to be taken to the hospital for emergency surgery. (Doc. No. 51-1 at 19.)  Plaintiff was then taken from the prison to the hospital. (Doc. No. 50-1 ¶ 40 (explaining that Plaintiff was transported in a prison van, not an ambulance).)  At the hospital, Plaintiff underwent surgery for the removal of his appendix. (Doc. No. 51-1 at 19.)

At his deposition, Plaintiff testified that he had not been informed by any physician that he should have had his appendix operation prior to July 29, 2019, or that not having his appendix removed before that date made his condition any worse. (Doc. No. 50-1 ¶ 41; Doc. No. 52-1 ¶ 19.)  Additionally, Plaintiff testified at his deposition that, except for telling PA Stoltz on July 29, 2019, that he was unable to eat, Plaintiff does not recall if he relayed this information to any of the correctional officers or anyone else. (Doc. No. 50-1 ¶ 42; Doc. No. 52-1 ¶ 20.)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. See id. at 248; Gray v. York Newspapers,

Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence

is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477

U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283,

1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the Court must view

the facts and all reasonable inferences in favor of the nonmoving party.  See Moore v. Tartler,

986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992);

White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988).  In order to avoid summary

judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his

or her pleadings.  When the party seeking summary judgment satisfies its burden under Rule 56

of identifying evidence that demonstrates the absence of a genuine issue of material fact, the

nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to

interrogatories, or the like in order to demonstrate specific material facts that give rise to a

genuine issue.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The party opposing the

motion "must do more than simply show that there is some metaphysical doubt as to the material

facts."  See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).  When Rule

56 shifts the burden of production to the nonmoving party, that party must produce evidence to

show the existence of every element essential to its case that it bears the burden of proving at

trial, for "a complete failure of proof concerning an essential element of the nonmoving party's

case necessarily renders all other facts immaterial."  See Celotex, 477 U.S. at 323; see also

Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

As noted supra, when determining whether an issue of material fact exists, the Court must

consider the evidence in the light most favorable to the nonmoving party.  See White, 862 F.2d at

59.  In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor.  See id. (citations omitted).  However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted."  See L.R. 56.1.  A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant.  These rules apply with equal force to all parties.  See Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (noting that pro se parties "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants").

## III.    DISCUSSION

Plaintiff has asserted an Eighth Amendment claim against Defendants Anderson, Miller, and Hofford pursuant to Bivens, claiming that they were deliberately indifferent to his serious medical needs while he was incarcerated at LSCI Allenwood.  (Doc. Nos. 1, 38, 39.)  The Court previously determined that a Bivens remedy is available for Plaintiff's Eighth Amendment claim against Defendants Anderson, Miller, and Hofford.  See (Doc. No. 38 at 10-19); see also Carlson v. Green, 446 U.S. 14, 23-25 (1980) (extending an implied cause of action for money damages pursuant to Bivens under the Eighth Amendment's Cruel and Unusual Punishment Clause in the prison medical care context); Shorter v. United States, 12 F.4th 366, 372 (3d Cir. 2021) (explaining that "[i]f a case does not present a new Bivens context, the inquiry ends there, and a Bivens remedy is available").  Thus, the Court begins its discussion with an overview of the Eighth Amendment.

The United States Constitution "does not mandate comfortable prisons, . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment[.]"  See Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citation and internal citation and quotation marks omitted).  In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."  See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); Farmer, 511 U.S. at 832 (explaining that the Eighth Amendment imposes a duty on prison officials to, inter alia, ensure that prisoners receive adequate medical care (citations omitted)).  As explained by the United States Supreme Court, prison officials violate the Eighth Amendment "when they are deliberately indifferent to an inmate's serious medical need."  See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

"[T]he concept of a serious medical need . . . has two components, one relating to the consequences of a failure to treat and one relating to the obviousness of those consequences."  See Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991).  The "condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death[,]" and "the condition must be one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  See id. (citation and internal quotation marks omitted).

The concept of "deliberate indifference" requires that the prison official actually knew of and disregarded "an excessive risk to inmate health or safety[.]"  See Farmer, 511 U.S. at 837. This means that the prison official was aware of facts from which the inference could be drawn that an excessive risk of harm exists, and the prison official must also draw that inference.  See

13

id.  The United States Court of Appeals for the Third Circuit ("Third Circuit") has found deliberate indifference when a "prison official: (1) knows of a prisoner's need for medical treatment and intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  See Rouse, 182 F.3d at 197 (citation omitted).

The Court now turns to Defendants Anderson, Miller, and Hofford's motions for summary judgment.  Because the Defendants have filed separate motions, the Court first addresses Defendant Hofford's motion, and then addresses Defendants Anderson and Miller's motion.

### A.      Defendant Hofford

Defendant Hofford argues that she is entitled to summary judgment because Plaintiff did not have a serious medical need, and because she was not deliberately indifferent to Plaintiff's medical needs.  (Doc. No. 53 at 8, 10-14.)  Although Plaintiff has not opposed Defendant Hofford's motion for summary judgment, the Court has conducted a thorough and impartial review of the record in this matter.  Having done so, the Court is unpersuaded by Defendant Hofford's arguments.

As an initial starting point, the Court concludes that Plaintiff's appendicitis, for which he was required to undergo an appendectomy, constitutes an objectively serious medical need under the Eighth Amendment.  See Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017) (stating that, "[i]n this case, the parties agree that [the prisoner-plaintiff's] appendicitis and urethral tear both constitute serious medical needs, and, as we noted the first time this case was appealed, we think it beyond question that both medical issues were serious" (citations omitted)); Brown v. Osmundson, 38 F.4th 545, 550 (7th Cir. 2022) (stating that the prisoner-plaintiff could

"easily satisfy" the first inquiry under an Eighth Amendment analysis since "[a]ppendicitis is an 'objectively serious medical condition' that, left untreated, leads to a perforated (or ruptured) appendix, requiring invasive surgery to avoid serious injury and death"); Blackmore v. Kalamazoo Cnty., 390 F.3d 890, 899 (6th Cir. 2004) (concluding, in the context of an Eighth Amendment claim, that the detainee-plaintiff's appendicitis was a serious medical need even though his appendix did not rupture and an appendectomy was successfully performed without complication).[4]

Next, the Court concludes that there is a genuine dispute of material fact as to whether Defendant Hofford was deliberately indifferent to Plaintiff's serious medical need of appendicitis. Although Defendant Hofford argues that "[i]t is improbable that Plaintiff can substantiate deliberate indifference on [her part] because her medical training and an in-person evaluation of Plaintiff didn't show that [his] symptoms were an emergency" (Doc. No. 53 at 14), the Court finds that this argument is belied by the evidence of record.

In his complaint, Plaintiff alleges that when he arrived at Health Services on July 28, 2019, he collapsed in the lobby in front of Defendant Hofford who "immediately began screaming at [him], demanding he get off of the floor." (Doc. No. 1 at 10, ¶ 19.) Plaintiff alleges that Defendant Hofford proceeded to question him about whether his unit officer knew that he was at Health Services. (Id.) Plaintiff claims that, after she called the unit officer (i.e., Defendant Anderson), she "demanded" that Plaintiff return to his housing unit. (Id. ¶ 20.) Plaintiff further claims that she did not provide him any "treatment, evaluation, or observation"

---

[4] Defendant Hofford's attempts to argue otherwise are not only unpersuasive but are more appropriately asserted in connection with the second part of an Eighth Amendment analysis— i.e., deliberate indifference. See, e.g., (Doc. No. 53 at 10-13 (asserting arguments based upon her own subjective perception of the interaction she had with Plaintiff on July 28, 2019, in order to argue that his medical need was not objectively serious under the Eighth Amendment).)

for his medical condition.  (Id.)  Finally, Plaintiff alleges that, approximately two (2) hours later, when Defendant Miller contacted Health Services on his behalf, Defendant Hofford "again refused to treat him."  (Id. ¶ 22.)

The Court finds that there is evidence of record supporting these specific factual allegations contained in Plaintiff's complaint.  More specifically, Plaintiff's sworn affidavit, which is attached as an exhibit to his complaint, not only reiterates these allegations, but elaborates that Defendant Hofford "did not provide [him] an opportunity to explain [his] symptoms" and "did not instruct [him] to notify the unit officer if the pain increased[.]"  (Id. at 34.)  Additionally, Plaintiff's sworn deposition testimony further expands on these allegations. (Doc. No. 51-1 at 12-16 (testifying, inter alia, that Defendant Hofford screamed at him after he collapsed on the floor at Health Services, that she never asked him what was wrong, that she did not care and only cared about who had sent him to Health Services, and that when Defendant Miller subsequently contacted Health Services on his behalf, she refused to see him).)

The Court further finds that this evidence is in direct contradiction to other evidence of record.  More specifically, in Defendant Hofford's affidavit, she states as follows: Plaintiff did not collapse at Health Services; she did not scream at him; she provided him with an opportunity to fully explain his medical concerns; she completed a visual medical assessment of him; and she notified him to inform his unit officer if his symptoms worsened.  (Doc. No. 51-8.)  Additionally, in Defendant Hofford's "Clinical Encounter – Administrative Note[,]" which appears to reflect her notes from her interaction with Plaintiff at Health Services on July 28, 2019, she states, inter alia, that Plaintiff "slowly lowered himself down on the floor[,]" that she questioned him about whether "his [CO] knew" he had come to Health Services, and that "[h]e was out of bounds" by being there and, thus, she "would not see him at this time."  (Doc. No. 1 at 33).  In this Note,

16

Defendant Hofford also states that she instructed Plaintiff to report to sick call in the morning and that, if his condition got worse, to have "his CO call medical, otherwise sick call and Monday."  (Id.)

Thus, even though Plaintiff did not file a response to Defendant Hofford's motion for summary judgment, the Court cannot turn a blind eye to the genuine dispute of material fact that exists in the record concerning whether Defendant Hofford acted with deliberate indifference to Plaintiff's serious medical need of appendicitis on July 28, 2019, at LSCI Allenwood.  See Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991) (recognizing its prior precedent that a district court should not grant "summary judgment solely on the basis that a motion for summary judgment was not opposed").  More specifically, the Court finds that there is evidence in the record upon which a reasonable factfinder could conclude that Defendant Hofford intentionally denied Plaintiff's need for medical treatment or delayed such treatment for a non-medical reason (i.e., for Plaintiff being in Health Services without, allegedly, permission from his unit officer).  See Rouse, 182 F.3d at 197 (finding deliberate indifference when a "prison official: (1) knows of a prisoner's need for medical treatment and intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment" (citation omitted)).

To conclude otherwise would require the Court to resolve the factual dispute in the record by weighing the evidence and making a credibility determination as to whose version of the events is more believable, which is inappropriate in connection with a motion for summary judgment.  See Anderson, 477 U.S. at 249 (instructing that, "[a]t the summary judgment stage[,] the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial"); Carvalho-Grevious v. Delaware

17

State Univ., 851 F.3d 249, 262 (3d Cir. 2017) (stating that "[c]redibility determinations are for the factfinder and are inappropriate at the summary judgment stage" (citation omitted)). Accordingly, for all of these reasons, the Court will deny Defendant Hofford's motion for summary judgment.

### B.      Defendants Anderson and Miller

Defendants Anderson and Miller argue that they are entitled to summary judgment because Plaintiff did not have a serious medical need, and because they were not deliberately indifferent to Plaintiff's medical needs.  (Doc. No. 51 at 7, 11-19.)  The Court agrees in part.

As discussed above, the Court finds that Plaintiff's appendicitis, for which he was required to undergo an appendectomy at the hospital, constitutes a serious medical need under the Eighth Amendment.  However, the Court finds that, with respect to Defendants Anderson and Miller, there is no evidence of record to create a genuine dispute of material fact that they acted with deliberate indifference to that serious medical need.  More specifically, there is no evidence of record that Defendants Anderson and Miller actually knew of and disregarded an excessive risk to Plaintiff's health or safety.  See Farmer, 511 U.S. at 837 (explaining that the prison official must be aware of facts from which the inference could be drawn that an excessive risk of harm exists, and the prison official must also draw that inference).

Additionally, while the Third Circuit has found deliberate indifference in three (3) instances, the Court finds that none of those instances are applicable here.  See Rouse, 182 F.3d at 197 (finding deliberate indifference when a "prison official: (1) knows of a prisoner's need for medical treatment and intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment" (citation omitted)).  Indeed, there is no evidence of record to

suggest that Defendants Anderson and/or Miller, who Plaintiff acknowledges are not medical professionals, intentionally refused to provide him with medical treatment or otherwise prevented him from, or delayed him in, receiving such treatment from medical professionals. Moreover, while Plaintiff underwent an appendectomy at the hospital for his appendicitis, there is no evidence of record that, at the time of their interactions with Plaintiff, Defendants Anderson and/or Miller knew of any facts from which the inference could be drawn that there was an excessive risk of harm to Plaintiff's health or safety or that they actually made that inference.

Rather, the evidence suggests that Plaintiff stated to them only that he did not feel good, that something was wrong with his stomach, that he had pain, and that he clutched his stomach. (Doc. No. 51-1 at 9, 12, 15, 17.) The evidence also suggests that, from the perspective of Defendants Anderson and Miller, Plaintiff was able to stand and ambulate throughout the prison from his cell to the shower, to the correctional officers' office, and to Health Services. (Id. 9, 11, 12, 16, 17.) Finally, and again, from the perspective of Defendants Anderson and Miller, Plaintiff was being seen by medical professionals in Health Services for his complaints. (Doc. No. 51-2 at 2; Doc. No. 51-4 at 1.) All of this evidence is only further underscored by the undisputed fact that Plaintiff was not suspected to have appendicitis until he was examined by PA Stoltz during the morning of July 29, 2019, a time period after which Defendants Anderson and Miller already had their interactions with Plaintiff.[5] (Doc. No. 51-1 at 18-19.)

Accordingly, for all of these reasons, the Court concludes that Defendants Anderson and Miller are entitled to judgment as a matter of law. The Court will, therefore, grant their pending

---

[5] This does not change the Court's conclusion that there is evidence in the record upon which a factfinder could conclude that Defendant Hofford acted with deliberate indifference to Plaintiff's serious medical need, even thought PA Stoltz did not suspect appendicitis until the following day.

motion for summary judgment.  The Court will defer entry of judgment in their favor until the conclusion of the case.  See Farmer, 511 U.S. at 844 (explaining that "prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment[,]" and, thus, "[p]rison officials charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent").

## C.      Defendant Anderson and Miller's Motion to Seal

As set forth above, Defendants Anderson and Miller, in addition to submitting their motion for summary judgment to the Court, have also submitted a motion seeking to file certain documents under seal (Doc. No. 48), as well as the documents that they seek to file under seal (Doc. No. 49).  On April 22, 2022, the Court, observing that Defendants Anderson and Miller had neither filed a brief in support of their motion to seal, nor explained why the documents should remain under seal pursuant to the standard articulated in Avandia, 924 F.3d 662, directed them to show cause why the documents should be kept under seal pursuant to that standard. (Doc. No. 54.)   In accordance with the Court's Order, Defendants Anderson and Miller filed their supporting brief on April 29, 2022.  (Doc. No. 55.)

In their supporting brief, Defendants Anderson and Miller argue that the documents they seek to file under seal contain confidential healthcare related information concerning Plaintiff and are subject to protections pursuant to the Health Insurance Portability and Accountability Act ("HIPAA").  (Id. at 1-2.)  Defendants Anderson and Miller further argue that the docket in this case is not under seal and, thus, in order to maintain the confidentiality of, and ensure HIPAA protections for, Plaintiff's medical records, they request that the Court keep these

20

documents under seal.  (Id. at 2.)  In connection with their arguments, Defendants Anderson and

Miller have cited to a number of factors set forth by the Third Circuit in Avandia, and they have

conducted an analysis of those factors with respect to this case.  (Id. at 2-4.)  Based upon their

analysis, Defendants Anderson and Miller argue that their motion to seal should be granted.  (Id.)

Having reviewed their arguments, the Court is unpersuaded.

At the outset, the Court observes that the factors cited to by Defendants Anderson and

Miller, which were originally set forth by the Third Circuit in Pansy v. Borough of Stroudsburg,

23 F.3d 772, 787-91 (3d Cir. 1994) ("Pansy"), are the factors that courts consider when

determining whether "good cause" exists for a protective order to issue pursuant to Rule 26 of

the Federal Rules of Civil Procedure.  See Avandia, 924 F.3d at 671 (explaining that the party

seeking a protective order over discovery material pursuant to Fed. R. Civ. P. 26(c)(1) "must

demonstrate that good cause exists for the order[,]" and further explaining that courts consider

the various Pansy factors in order to determine which such good cause exists (citations and

internal quotation marks omitted)).

Here, however, there is no motion pending before the Court that seeks the issuance of a

protective order under Rule 26 of the Federal Rules of Civil Procedure.  This is particularly

problematic for Defendants Anderson and Miller in light of the Third Circuit's 2019 decision in

Avandia.  As discussed in that case, the standard governing protective orders under Rule 26 is

fundamentally different from standard that governs the common law right of public access to

judicial records:

> In short, while the Pansy factors may provide useful guidance for courts
> conducting the balancing required by the common law test, the Pansy factors do
> not displace the common law right of access standard. The difference is not
> merely semantic—the Pansy factors are not sufficiently robust for assessing the
> public's right to access judicial records. Unlike the Rule 26 standard, the

common law right of access begins with a thumb on the scale in favor of openness—the strong presumption of public access.

See Avandia, 924 F.3d at 676.  While the Court finds that this alone offers a basis for denial of Defendant Anderson and Miller's pending motion to seal, the Court will briefly discuss the import of Avandia and why Defendants have failed to meet their burden here.

"[T]he common law presumes that the public has a right of access to judicial materials." Id. at 672.  Thus, "[i]n both criminal and civil cases, a common law right of access attaches to judicial proceedings and records."  See id. (citation and internal quotation marks omitted).  This right of access "includes the right to attend court proceedings and to inspect and copy public records and documents, including judicial records and documents."  See id. (citation and internal quotation marks omitted).  And, "[w]hether the common law right of access applies to a particular document or record turns on whether that item is considered to be a judicial record." See id. (explaining that "[a] judicial record is a document that has been filed with the court . . . or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings" (citation and internal quotation marks omitted)).  As explained by the Third Circuit, "documents filed in connection with a motion for summary judgment are judicial records."  See id. (citation omitted).

However, "[t]he presumption [of access] is just that, and thus may be rebutted."  See id. (citation and internal quotation marks omitted).  The party seeking to overcome the presumption of access carries "the burden of showing that the interest in secrecy outweighs [that] presumption."  See id. (citation and internal quotation marks omitted).  More specifically, the party "must show that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure."  See id. (citation and internal quotation marks omitted).

22

Because of the strong presumption in favor of openness, "the routine closing of judicial records to the public" is simply not permitted.  See id. (citation and internal quotation marks omitted).  As a result, the Court "must articulate the compelling, countervailing interests to be protected, make specific findings on the record concerning the effects of disclosure, and provide[] an opportunity for interested third parties to be heard."  See id. (citation and internal quotation marks omitted).

Here, the Court is presented with slightly unusual circumstances.  More specifically, Defendants Anderson and Miller have filed a motion to seal Plaintiff's medical record.  (Doc. Nos. 48, 49, 55.)  In other words, Defendants Anderson and Miller are not seeking to protect their own interests; they are seeking to protect Plaintiff's interests.  (Id.)  As discussed above, however, Avandia places the burden on the movant to show, inter alia, that disclosure of the document will work a clearly defined and serious injury to the movant.  See Avandia, 924 F.3d at 672 (stating that "[t]he movant must show that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure" (emphasis added) (citation and internal quotation marks omitted)). Consequently, the Court finds that Defendants Anderson and Miller have not articulated any injury that they will allegedly sustain if the information contained in Plaintiff's medical record is disclosed, much less a "clearly defined and serious injury."  See id. (citation and internal quotation marks omitted).

Moreover, to the extent that Defendants Anderson and Miller seek to protect Plaintiff from any potential injury as a result of disclosure of his medical record, the Court finds that their arguments are unpersuasive.  Plaintiff's medical record is four (4) pages long, lists an "[e]ncounter [d]ate" of July 29, 2019, and identifies PA Stoltz as the medical provider.  (Doc.

No. 49 at 1.)  Generally speaking, Plaintiff's medical record sets forth PA Stoltz's notes from his encounter with Plaintiff at LSCI Allenwood on that date.  (Id. at 1-3.)  The Court, having reviewed this record, observes that two (2) of the four (4) pages from this document are attached as exhibits to Plaintiff's complaint.  Compare (Doc. No. 49 at 1, 3) with (Doc. No. 1 at 18, 19).  The Court further observes that the two (2) pages that have been attached to Plaintiff's complaint contain the most substantive information out of all four (4) pages comprising his medical record.

Accordingly, while the Court certainly appreciates the efforts of Defendants Anderson and Miller to protect Plaintiff's medical information, the Court finds that they have not, as the movants, met their burden under the standard articulated by the Third Circuit in Avandia.  As a result, the Court will deny their motion to seal.  In denying their motion, the Court believes that the underlying purposes of the common law right of access will be furthered here.  See Avandia, 924 F.3d at 672 (explaining that the common law "right of access promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court" and provides the public with "a more complete understanding of the judicial system and a better perception of its fairness" (citation and internal quotation marks omitted)).[6]

## IV.  CONCLUSION

Thus, for the reasons that are set forth above, the Court will grant Defendants Anderson and Miller's motion for summary judgment, and the Court will deny Defendant Hofford's motion for summary judgment.  In addition, the Court will deny Defendants Anderson and Miller's motion to file certain documents under seal.  An appropriate Order follows.

---

[6]  To the extent that Defendants Anderson and Miller have loosely referenced HIPAA, their reference has neither been specifically articulated nor fully developed in order for the Court to properly address it at this time.  (Doc. No. 55 at 2.)  Moreover, and as discussed above, Plaintiff has attached the most substantive portions of this medical record to his complaint and, thus, has elected to make those portions a part of the Court's public docket in this case.